Good morning, everyone. Welcome to the Ninth Circuit. We're delighted to see you here today. We will take the cases in the order that they appear on the calendar. And the first case up is Ishimwe v. Barr. If counsel for that case are ready, please proceed. May it please the Court. My name is H. Glenn Fogel, Jr. and I represent the petitioner, Mr. Samuel Ishimwe. The totality of the circumstances approach imposes a requirement that an immigration judge not cherry-pick facts solely favoring an adverse credibility determination, while ignoring facts that undermine that result, in other words, that support the case. This is a case about credible testimony, and what the BIA and the immigration judge did here is merely focused on the petitioner's testimony. They completely ignored all the documentary evidence that was submitted that supported his credibility and that supported his case. They ignored the witnesses. There were two witnesses that testified for him, and there was also a letter that's in the record from a witness who was there at the time, who was a neighbor. All of these things were ignored. But, counsel, there's several inconsistencies that the I.J. pointed to. Could you address those? Yes, Your Honor. There are several inconsistencies, and I'm not going to deny that. However, I will address those in that a lot of the inconsistencies, number one, didn't go to the heart of the claim and were really somewhat minor. Does our case law require that they go to the heart of the claim on a credibility determination? No, it does not. It does not, however. But, again, this circuit and many other circuits have consistently held that you have to look at the totality of the evidence. The witness testimony is just one part of the evidence. But it seems to me that your better argument about the totality of the evidence is that the BIA and the I.J. both suggest that the credibility finding was based on the totality of the circumstances. So it seems as if, and even they say some may not support a claim on their own, remand may be necessary then. So it seems to me that if, in fact, you can succeed on any of these five different inconsistencies, at that point one might have to remand to see if it was still a totality. Wouldn't that be the question? That may be correct, Your Honor. That's what they say, but they don't analyze any of the other witness testimony. Well, now you're getting as to the inconsistencies and why you might be right therein. All I'm trying to get is if, in fact, they have any of these inconsistencies which are not appropriate for finding inconsistent testimony, do I need to remand? I think so, Your Honor. I mean, I think that if you find the totality of circumstances finds that the petition was, in fact, believable or his claim is credible, that there does have to be additional analysis. Then let's turn to the inconsistency regarding where he was when his sister-in-law was killed. That was certainly an inconsistency. He was inconsistent on how they were killed and where he was at the time of the killing, right? I agree, Your Honor. He was. However, this is… And, therefore, it seems to me that that would be a valid inconsistency on which the BIA and the IJ could rely. Is there any reason they shouldn't rely? Well, Your Honor, you have to look at the whole case. Well, I'm understanding you look at the whole case, but we're not on an inconsistency going to the heart of the matter. We're going on any inconsistency now based on the change of law, and there's one where I really don't think you have a lot of argument about. And, Your Honor, I don't disagree with that one, but I don't think it goes to the heart of the claim. And I think that, in and of itself, is not enough. Based on the weight of the evidence, the other witness testimony, the many documents that were submitted that have to be taken as true that were not addressed by the BIA or the immigration judge. There's witness testimony. One of the witnesses, and I'm going to probably butcher his name, Charles N. Zagbonie. He was a former chief of police in Kigali at the time of the, you know, this was occurring before he left. And he personally knew the petitioner, and he corroborated his claim. There was the petitioner's second cousin, who, though he wasn't an eyewitness to the testimony, he was able to testify about what happened due to one of the other relatives that told him about the pastor being killed and the petitioner burying the pastor. And then there was an eyewitness. Her name is Rachel Mukatare, and she didn't testify, but she wrote a letter that was submitted and accepted into the evidence. It was completely ignored by the judge and completely ignored by the BIA. So what inconsistency are you really talking about with that particular evidence? I mean, I have five inconsistencies generally outlined here, and I'm just trying to figure out what you're really going after. If we talked about one of the inconsistencies, let's take another inconsistency regarding the grenade, why he was targeted by the Tutsi soldiers, the omission regarding where he fled. Do you think there's a problem with that inconsistency? Well, Your Honor, I don't, you know, I can't imagine being in that particular situation, but I think that's a very, the grenade is a very minor inconsistency, whether it was showed to him or left outside of his door. I mean, both times he said it was left outside of the door. The asylum application is slightly different. Well, I understand that, but I guess what I'm trying to figure out is if I'm going to weigh this inconsistency, on what ground should I say that the BIA and IJ can't rely thereon other than trivial? Well, I mean, I think that's really what it is. I mean, there was a grenade. He was attacked. Was he ever confronted about this inconsistency? I believe he was. I believe he was, and then I believe he said, based on my recollection, I'm trying to remember, 2600-page record here. Well, the reason I'm asking this very straight is when I got into this area of the law, and I admit an old Idaho lawyer is not one who generally understands this on a regular basis, but 20-some-odd years ago I had to get into this. First of all, you have to have an inconsistency, and then you have to be confronted about the inconsistency, and then there has to be an explanation about the inconsistency, and then the IJ and the BIA have to determine why that explanation is not relevant or isn't applicable. And so I'm trying to figure out on this particular inconsistency what it is that you're challenging besides it's trivial, which I think has kind of gone by the wayside based on it doesn't have to go to the heart of the matter. Well, I mean, ultimately, Your Honor, I don't think it's really that. Whether he was shown a grenade when they smashed his window and then the grenade was left on the outside of his door or whether they just left the grenade on the outside of the door, I just really you cannot expect witnesses, and particularly I think somebody who's been trying to remember something that's like 15, 20 years ago and going to give the exact same testimony every time and not being his first language  When you look at that, I just don't think that that's significant, whether he was shown a grenade in a window or whether he wasn't shown a grenade and the grenade was left outside. I mean, and he was attacked various times. I mean, they came to his house numerous times. That's just not significant. But I think that in the bigger picture, what we have to look at is the totality of the evidence. The totality of the evidence supports his claim. He was a Seventh-day Adventist pastor. I don't think there's any issues that this other pastor who was his colleague was killed and that he went to his house and buried him. They make inconsistencies from an unknown witness testimony that they've sort of extracted out of a total hearing in this international tribunal that they were holding and, again, just says, well, the only difference there is the difference in the number of people that were killed and where the bodies were. But it doesn't put that particular witness at any place in time, and that particular witness didn't say anything about the petitioner being there because, obviously, he came there many, many hours later. We don't know what happened in between the time that the pastor was killed and then the time that the petitioner arrived there. That's my explanation with respect to that particular supposed inconsistency. I think I'm going over time. I'll answer any other questions if the Court has them. I think there are none for now, but we'll give you a minute for rebuttal. All right, thank you. Thank you. Let's hear from the government. Good morning, Your Honors. May it please the Court. Daniel Smula on behalf of the United States Attorney General. Your Honors, in this case, no reasonable fact finder would be compelled to credit Ishimwe's claim for asylum that contained material inconsistencies through every facet of his claim. Well, let's try the first. Yes. This is the inconsistency with regard to how many people died in addition to Pastor Ammon and their location. Let's try that one. Yes, Your Honor. He didn't have any inconsistency in his testimony with that one. What the BIA did and what the IJ did is they matched his testimony against an anonymous witness. Yes, that's correct, Your Honor. An A-A-A, anonymous witness. So they matched his testimony against this anonymous witness. Did he ever get a chance to cross-examine that witness? He did not, Your Honor. Okay, so he didn't get to confront the witness. The witness is unknown. As a general rule, may I use this hearsay testimony? Absolutely, Your Honor. What is my best case? Sanchez v. Holder, Your Honor. It's 704 of the federal third reports at 1109. The case law in this circuit is clear. As long as the evidence is probative and fundamentally fair, the rules of evidence do not apply. How can it be fundamentally fair to confront this witness on where a guy was killed or how many killed him and they don't even get a chance to cross-examine? How is that fair? Your Honor, it's fair simply because the witness was a witness in the International Criminal Tribunal for Rwanda. So what if he was? His testimony, frankly, when I read his testimony, even in that international tribunal, I didn't see any place in that transcript where the witness was ever cross-examined as to the number of people that were in the house or their location. I believe, as I read the transcript, that those facts were unchallenged. He was cross-examined, certainly. Well, he wasn't cross-examined on that. Not as to that. And that's exactly why you're now going to argue to me that this particular petitioner, who doesn't get a chance to confront him on this evidence, ought to be inconsistent and therefore incredible. Your Honor. Is that fair? That is one aspect, Your Honor, of the totality of the circumstances. All right, that's one aspect. Let's go about the inconsistent testimony regarding who killed the pastor. Yes, Your Honor. Was he ever confronted about what he said about that? As I recall, he was confronted with that. He was not confronted. But it's his brother's name. If he was confronted, did they ever explain why his explanation of the confrontation was wrong? Your Honor, as I recall, he was confronted with first trying to establish his brother's name. I'd like to have you give me the place in the transcript that says he was confronted because I don't think it's in there. But even if he were, let's go to the second part. At that point, did they ever explain why his answer to the confrontation was wrong or why it wasn't credible? I'm sorry. Which confrontation, Your Honor? I'm talking about the one we're talking about with who killed Pastor Ammon. At first he says he doesn't know. Then he's presented with a conviction document with his brother, who is using an alias which he initially denied. He then accepted the fact that he did use that alias when confronted with a yearbook with his brother's picture in it and then said, well, okay, maybe it was my nephew. Well, who? It was nobody. It was my, confronted with a conviction document saying it was his brother. Well, it was my brother's son, my nephew. That's not consistent, Your Honor. Here's what he said. Well, I understand it may be inconsistent. I'm just trying to say when was he confronted? He was in that group, but I don't know whether he's the one that did it, but he was in the group which went there. I didn't find any confrontation. But even if confronted, where did the IJ consider and address the applicant's explanation for the identified discrepancy? That you have to do. I think perhaps the IJ could have made it more clear. So then we can't go with that one. Well, respectfully, Your Honor, I think that does survive substantial evidence that there are certainly inconsistencies as to his testimony. Well, frankly, I don't know anything in our case law that would suggest when we have an inconsistency and we don't confront and we don't explain why the explanation isn't any good, so therefore I have nothing to examine on appeal, and I don't know whether to be able to approve or not disapprove that I've been able to say in those instances that that's some inconsistency that the BIA can rely on. So we've got number one about how many people died and their location. We've got number two about who killed Pastor Ammon. What about the inconsistency about why he was summoned by the GACA court and how he fled the house? Yes. Initially he said, okay, well, I was summoned by the GACA court and I was simply a witness.  Why did he reject the petitioner's explanation? Because he later denied that he was ever accused during his cross-examination. But if you read this testimony, where in the record, cite the reference, I'd like to find it, where the I.J. ever stated why he did not accept the explanation. Your Honor, the explanation became, the question is that I understood it. He was confronted, and this is by DHS counsel, Department of Homeland Security counsel, on page 732. Where in? Page 732 of the record. He's confronted with, well, I was answerable, I was held answerable. And what does answerable mean as it relates to accused? And on page 732 of the record, DHS counsel asks him specifically to clarify whether he is accused or whether he is a witness. And he says, I was accused, and I may not be getting it precisely correct, but I was accused indeed. Well, my worry about all of this is that when we're looking at the procedure for the I.J. and the BIA and what they have to do to make these credibility determinations, I've picked the three that I have the most problem with. And, therefore, I come to my final question. If, in fact, the BIA and the I.J. both suggest that the credibility finding was based on a totality of the circumstances and that some of these inconsistencies may not support a claim on their own, how can I suggest, then, that the credibility determination is a valid one? Why do I not remand, then, to say, I don't really believe you got anything on 1, 2, and 5, and I don't know whether 2, 3, and 4 would survive? Your Honor, there are other inconsistencies in the totality of the circumstances that the Board relied upon, and I will get to your... Whether he was targeted by the Tootsie soldiers, about where he fled, and about where he was when his sister-in-law was killed. All I'm saying is all of those, I don't know whether they would do it on that because they said some may not support the claim on their own. They did say that these are major inconsistencies. It's a real I.D., so they need not go to the heart of the claim, but here they do. And in the Court's opinion in Shreestha, I may be mispronouncing that, but what the Court does is say, look, in this instance, that may not be enough to support the claim, but his inconsistencies as to the number of times that he was attacked, I believe it was by Maoists in Nepal, that suffices in the court-denied petition. We don't know that because the BIA said we're doing this on the totality. Some may not support. So maybe we ought to send it back, see which ones do and which ones don't. Your Honor, respectfully, the government's position is that remand is not necessary here because, again, substantial evidence standard. Well, how do I know whether they really believe? I can't make that determination. They have to, and they have said some of these might not support this. How do I know which ones they think do and which ones they think don't? Because, Your Honor, standing alone, the reason he was targeted for harm in the first place, which he was completely inconsistent about, which he was absolutely cross-examined about and asked about to reconcile, why you were targeted for harm is the fundamental crux of an asylum claim. He couldn't keep his story straight as to that. That alone suffices, Your Honor. Of course, being menaced with a grenade is a scape for man. I wish the BIA had said that as well as you do. Well, I appreciate that, Your Honor. Because the BIA didn't say that. The BIA said, well, on the totality, we're going to generally accept it, but some of these might not on their own. Well, Your Honor, I see I'm out of time. If I could just finish my point, Your Honor. The totality of the circumstances is, of course, what the REAL ID Act requires, and the Board did that here, and they certainly came to some very fundamental aspects of his testimony which were not credible, which were contradicted and in which he failed to reconcile. If the Board and if Your Honor believes that some of those were not quite up to snuff and not sufficient, still, under the totality of the circumstances, those alone suffice and do not demand that the Court find him not credible or compel the conclusion that he was credible, rather. For all those reasons, Your Honor, I'd ask the courts to dismiss the petition for review. Okay. Thank you very much. If we could put a minute on the clock for rebuttal. Just briefly, Your Honors, there's one other point that I didn't make. One of the things that the Board found, and they completely misstated it, was that this anonymous witness testified that the petitioner's nephew, Fidel, killed Pastor Amick. They actually found that, and it's written, and it's the Administrative Record 117. That was one of the factors that they used, and that was totally incorrect because it's just not present. Because he didn't testify to that at all. No, he didn't testify to that at all. He didn't testify to anybody. I mean, there's a lot of problems. There's just not enough time to talk about all the problems with that. But that was one of the things that the Board found. So that in and of itself, I mean, that's a major point. They may have used that to tip the scales here to say that this petitioner is not credible. There's a lot of mistakes from the Board here and with the judge. And I think this case definitely was not looked at properly, and they did not consider all the evidence. And all they did was they cherry-picked these facts that support the negative credibility finding. Therefore, I would ask the Court to grant this petition and remand it back to the Board. Okay, thank you very much, Counsel. The case just argued is submitted.
judges: N.R. Smith, Watford, R. Nelson